In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2652

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KATRAIL BRIDGES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:19-cr-50047-5 — **Iain D. Johnston**, *Judge.*

ARGUED SEPTEMBER 5, 2025 — DECIDED JULY 21, 2026

Before ST. EVE, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* A jury acquitted Katrail Bridges of two robberies of consumer electronics stores but convicted him of conspiracy to commit robbery. At sentencing, the district court applied a Sentencing Guidelines enhancement that required the court to find beyond a reasonable doubt that Bridges agreed to commit each robbery. *See* U.S.S.G. § 1B1.2(d). Bridges contends the district court failed to follow that enhancement's requirements and find on the

record that he conspired to commit each of the robberies under a beyond-a-reasonable-doubt standard. We agree, vacate Bridges's sentence, and remand for resentencing.

## I.

### A. The Robbery Scheme

During the summer of 2016, Narcellus Taylor and his friends began robbing consumer electronics stores near Rockford, Illinois. Taylor was the ringleader. He planned the robberies alongside his cousin Brenda Price. After their arrest, both Taylor and Price cooperated against Bridges in exchange for leniency.

At Bridges's trial, Taylor and Price testified that they would choose a store to rob and the participants in the robbery would meet at a house the night before the robbery. At these meetings, Taylor would assign different roles to each participant. Some would be lookouts, and some would talk to sales employees to get them to bring laptops out of a back room. Others would grab the laptops and run, and still others would stay by the store's front door to keep it open. After the group made its getaway, Taylor would take the laptops to his fence and divide the proceeds among the participants who, as he testified, "played their part right."

Price was dating Bridges at the time. She testified that she told Bridges about the group's exploits and he wanted to get involved to make money. Price testified, as did Taylor, that Bridges participated in two robberies in December 2016—one on December 2 of a Best Buy in DeKalb, Illinois, and another on December 16 of a Simply Mac store in Cherry Valley, Illinois.

Taylor testified that the participants in the Best Buy robbery met at either Price's house or another group member's house beforehand. At that meeting, Price selected the Best Buy in DeKalb as the target. According to Taylor and Price, Bridges was assigned to either grab laptops or keep the store's front door open so other group members could run out with the laptops. The group then traveled to the store in separate cars.

When the group arrived at the Best Buy, Bridges entered the store with Taylor. But Bridges did not follow Taylor to get the laptops, nor did he stay by the door to keep it open. Instead, Taylor and Price testified—and a surveillance video shows—Bridges left the store early, before Taylor was finished grabbing the laptops. Taylor testified that he did not pay Bridges for the robbery because Bridges did not do his job.

Taylor testified that, two weeks after the Best Buy robbery, he, Price, Bridges, and six others met at Taylor's or Price's house to plan the Simply Mac robbery. Price picked the Cherry Valley Simply Mac as the target, and the group traveled there in separate cars.

Once they arrived, Price and another group member entered the store to scout. Bridges and two others followed shortly behind them. A surveillance video shows someone Taylor and Price identified as Bridges attempting to take a security device off a laptop before following the others into a back room. A surveillance video of the back room shows the group enter and confront employees, and shows Bridges grabbing a laptop from a shelf. Bridges and the others left the store shortly thereafter.

## B. Indictment and Trial

A grand jury indicted Bridges in 2018 on two counts of Hobbs Act robbery, 18 U.S.C. § 1951(b), and one count of conspiracy to commit Hobbs Act robbery, *id.* § 1951(a). Bridges attempted to enter a guilty plea to the conspiracy charge and the Best Buy robbery, but the district court rejected the plea because, during the plea colloquy, Bridges denied committing and agreeing to commit the Best Buy robbery. Specifically, Bridges stated that he rode in the car with Price to the Best Buy robbery without knowing about the planned robbery and, when he realized what was happening, he "want[ed] nothing to do with" the plan.

Bridges went to trial in 2024. The government called Taylor, Price, another group member, and several Best Buy and Simply Mac employees. Bridges did not put on a defense and did not testify.

The jury convicted Bridges on the conspiracy count but acquitted him on the two robbery counts. The jury's verdict on the conspiracy count was general and did not specify which of the two robberies the jury found Bridges had conspired to commit.

## C. Sentencing

The probation office calculated Bridges's Sentencing Guidelines range as 87 to 108 months, based on a total offense level of 28 and a criminal history score of II. In calculating that range, the probation office applied Guideline § 1B1.2(d), which had the effect of enhancing Bridges's offense level. That Guideline reads:

> A conviction on a count charging a conspiracy
> to commit more than one offense shall be

> treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

The government agreed with the probation office that the § 1B1.2(d) enhancement applied, and argued for an 87-month sentence.

Bridges argued for a sentence of 37 months with credit for time served. Citing an application note to § 1B1.2(d) and our decision in *United States v. Jett*, Bridges contended that § 1B1.2(d) should not apply because reasonable doubt existed as to whether Bridges conspired to commit either of the Best Buy and Simply Mac robberies. *See* Application Note 4 to U.S.S.G. § 1B1.2(d); 982 F.3d 1072, 1078 (7th Cir. 2020). Application Note 4 provides, in applying § 1B1.2(d):

> [p]articular care must be taken … because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

In *Jett*, we joined every other circuit to have considered the question in holding that this language "requires a sentencing judge to use the reasonable-doubt standard, and not merely the preponderance-of-the-evidence standard, to decide if a defendant conspired to commit each 'object offense' of the conspiracy." 982 F.3d at 1078.

At the sentencing hearing, the district court recognized that Application Note 4 to § 1B1.2(d) and *Jett* governed its analysis and invited the parties' arguments on whether to apply § 1B1.2(d). In response, the government contended that, as to the Best Buy robbery, both Taylor and Price "testified that this defendant was part of the conspiracy to commit that robbery and went to that location with the intent and instructions to commit that robbery." As to the Simply Mac robbery, the government noted that Taylor, Price, and another group member "identified the defendant as the individual, the masked individual, who stole laptops from that location" and "there was also a discussion about a conspiracy beforehand to commit that robbery." The district court then commented:

> THE COURT: I can't – I just can't recall off the top of my head the testimony about the meeting before, whether it was one meeting or meetings before both of the robberies at the apartment. I know it happened before one. As I sit here right now, I can't remember if the testimony was that there were meetings before both ….
>
> Just in my head, I recall very specific testimony about meeting in an apartment and discussing all these things. I just, as I sit here right now, can't recall if that testimony related to both robberies or just one. But you are correct, they had to have met up somewhere because they all went in one or two vehicles to the location. So they had to physically meet somewhere. Okay. [Bridges's attorney], do you have any recollection about the testimony, whether it was meet-

ing at an apartment for one or two? I just can't recall.

[BRIDGES'S ATTORNEY]: My recollection is the testimony between [Price] and [Taylor] was contradictory. … My recollection is [Taylor] referenced one meeting at which Mr. Bridges was present. [Price] said she picked Mr. Bridges up and drove to Best Buy.

THE COURT: Okay. Yes. All right. But, yes, she did testify that she drove him there, and I have a very vivid memory of the video of the parking lot as people are essentially running to the vehicles.

After briefly addressing findings not at issue, the district court overruled Bridges's challenge to the offense level calculation based on § 1B1.2(d). The court stated:

THE COURT: All right. I want to be really clear on this so that the record captures the findings that I'm making or if I am making findings. … I do believe the guideline manual, Section 1B1.2(d) applies, and the application notes at 3 and 4 help explain why they apply. … So the Court is going to find that Section 1B1.2(d) applies in this case and will overrule the objections as to the offense level calculation in the presentence investigation report.

The court did not make an express finding that Bridges conspired to commit either robbery beyond a reasonable doubt. Nor did the court explain why it found Bridges had conspired to commit the robberies beyond a reasonable doubt.

The district court ultimately sentenced Bridges to 87
months' imprisonment, which was at the low end of the
Guidelines range that had factored in the § 1B1.2(d) enhance-
ment. Bridges appeals.

## II.

Bridges challenges his sentence on procedural grounds, a
question we review de novo. *Jett*, 982 F.3d at 1077. Bridges ar-
gues that the district court erred by failing to make a finding
under the reasonable-doubt standard that he conspired to
commit either or both robberies. We agree with Bridges there
was error. We also reject the government's argument that
clear error review applies, and we conclude that the govern-
ment has waived harmless error review. We therefore vacate
Bridges's sentence and remand for resentencing.

### A. The District Court Failed to Make the Necessary
### Findings to Support the § 1B1.2(d) Enhancement

We begin with what the parties agree on: under Applica-
tion Note 4 and *Jett*, the district court was required to "use the
reasonable-doubt standard, and not merely the preponder-
ance-of-the-evidence standard, to decide if [Bridges] con-
spired to commit each 'object offense' of the conspiracy." 982
F.3d at 1078.

Where the parties disagree is whether the district court
satisfied *Jett*'s requirements. Their disagreement turns on
what degree of explanation a sentencing court must provide
for findings under § 1B1.2(d). Bridges argues that § 1B1.2(d)
requires express factual findings on the record. The govern-
ment, meanwhile, argues that express findings are not neces-
sary and that we may affirm the district court's application of
§ 1B1.2(d) where support for the district court's conclusion is

implicit in the record or from the district court's adoption of the factual findings in the presentence investigation report (PSR).[1]

We need not resolve this question today because, on this record, the district court failed to make any finding at all, either explicit or implicit, that Bridges conspired to commit either robbery beyond a reasonable doubt. Instead, the district court offered a brief discussion of the trial testimony without reaching a definite conclusion about whether Bridges committed each robbery beyond a reasonable doubt.

True, the district court recognized the governing standard and invited the parties' arguments about Bridges's guilt on the conspiracy count. But the district court also expressed confusion about the evidence, noting that it could not recall whether there were meetings before one or both of the robberies. The district court's last statements were equivocal, jumping from a remark that the group "had to have met up somewhere because they all went in one or two vehicles to the location. So they had to physically meet somewhere," to an acknowledgement that it "just can't recall." The district court then diverted course to address Bridges's other objections to the PSR before returning to the § 1B1.2(d) issue. But rather

---

[1] We have not yet spoken on that issue, and other circuits have diverged. *Compare United States v. Fisher*, 22 F.3d 574, 577 (5th Cir. 1994) (holding that a district court need not expressly make factual findings under § 1B1.2(d), as long as support for the district court's conclusion is implicit in the record); *United States v. Bates*, 552 F.3d 472, 478 (6th Cir. 2009) (similar); *with United States v. Ross*, 131 F.3d 970, 994 (11th Cir. 1997) (holding that a district court is required to make an express finding that the defendant conspired to commit the object offenses beyond a reasonable doubt in order to apply § 1B1.2(d)).

than clearing up the uncertainty, the district court concluded "that Section 1B1.2(d) applies in this case" and that it would "overrule the objections as to the offense level calculation in the presentence investigation report."

We acknowledge that a sentencing judge need not use "magic words" when the judge makes factual findings at sentencing. *United States v. Westerfield*, 714 F.3d 480, 488 (7th Cir. 2013). This is not a case, however, where the sentencing judge made a finding but failed to explain the reasons for that finding. Here, it is unclear from the record that the district court made a finding at all.

A finding is critical here because § 1B1.2(d) requires the sentencing judge to find facts beyond a reasonable doubt. That high bar means something. As the Supreme Court discussed in a different context, the beyond-a-reasonable-doubt standard is intended to "exclude as nearly as possible the likelihood of an erroneous judgment" against a criminal defendant. *Addington v. Texas*, 441 U.S. 418, 423 (1979). By contrast, under a preponderance standard litigants "share the risk of error in roughly equal fashion." *Id*. And as the Sentencing Commission noted in this very context, § 1B1.2(d) requires a "higher standard of proof" as a layer of protection for the defendant. U.S.S.G. App. C. ¶ 75, at 35–36 (1989). This protection is necessary because the Guideline "creat[es] … what is, in effect, a new count of conviction" for purposes of sentencing. *Id*.

Bridges's case illustrates why the extra protection of a beyond-a-reasonable-doubt standard applies to this Guideline. As a reminder, under § 1B1.2(d), a conviction on a single conspiracy charge spanning multiple object offenses is "treated as if the defendant had been convicted on a separate count of

conspiracy for each offense that the defendant conspired to commit." In recommending Bridges's sentence, then, the probation office treated his single conspiracy conviction as though it were two conspiracy convictions. That meant it calculated two separate offense levels for the Best Buy and Simply Mac conspiracies rather than calculating one offense level for the conspiracy charge as a whole. The probation office also factored in other enhancements that were applicable to Bridges's conspiracy charge—bodily injury, loss amount, and obstruction of justice—into his total offense level twice rather than once. All of this meant that Bridges's sentence, as recommended by the probation office and ultimately determined by the district court, was considerably higher than it would have been if the district court had not applied § 1B1.2(d).

The government argues that the district court's adoption of the PSR satisfied the district court's obligation to make findings under § 1B1.2(d). We reject that proposition on these facts. For one thing, it does not fit the sequence of events: the district court adopted the PSR's findings only *after* it overruled Bridges's objection to the § 1B1.2(d) enhancement. More importantly, the typical standard for factfinding at sentencing is preponderance of the evidence. *United States v. Galvan*, 44 F.4th 1008, 1012 (7th Cir. 2022). We emphasize again our prior holding: § 1B1.2(d) requires the district court to use the reasonable-doubt standard, not the preponderance-of-the-evidence standard. *Jett*, 982 F.3d at 1078.

In sum, we conclude the district court erred in applying the § 1B1.2(d) enhancement to Bridges's sentence when it failed to make the necessary findings under a reasonable-doubt standard.

## B. Remand is Necessary

The government asks us to affirm Bridges's sentence regardless, on clear error grounds. But clear error review does not apply here. As we have stated, where the district court failed to make necessary findings at sentencing, the error "cannot be cured by a deferential clear error standard of review." *United States v. Salem*, 597 F.3d 877, 886 (7th Cir. 2010).

Harmless error review would ordinarily apply here. For example, in *Jett*, we conducted harmless error review to affirm the defendant's sentence despite the district court's failure to make findings under the beyond-a-reasonable-doubt standard. *See* 982 F.3d at 1078–79. But in Bridges's case, the government disclaimed a harmless error analysis at oral argument and failed to argue harmless error in its brief on appeal, which waives the point. *See United States v. Giovannetti*, 919 F.2d 1223, 1229 (7th Cir. 1990), *reh'g en banc denied*, 928 F.2d 225 (7th Cir. 1991) (per curiam).

We have discretion to overlook the government's waiver of harmless error, *Giovannetti*, 928 F.2d at 227, but even if we were to do so, we cannot say the error was harmless. *See United States v. Feeney*, 100 F.4th 841, 848 (7th Cir. 2024) (holding an error was not harmless where the court "imposed a sentence within the range it calculated, and it did not suggest that [the defendant] would have received the same sentence if the guideline range were lower"). The evidence of Bridges's guilt as to the conspiracy count was not so "overwhelming" that we are left convinced "that the Guidelines error 'did not affect the district court's selection of the sentence imposed.'" *Jett*, 982 F.3d at 1078–79 (quoting *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009)). That distinguishes this case from *Jett*, where the district court very clearly stated it was con-

vinced of the defendant's guilt as to each conspiracy. *Id.* The district court here gave no such assurance. So even if we were to overlook the government's waiver, we would decline to affirm on harmless error grounds. A remand is necessary so that the district court can make the proper findings.

### III.

For these reasons, we VACATE Bridges's sentence and REMAND the case to the district court for resentencing consistent with this opinion.